## Case No. 927.

BANK OF THE UNITED STATES v. M'KENZIE.

[2 Brock. 393.] [2]

Circuit Court, D. Virginia. May Term, 1829.

STATUTE OF LIMITATIONS — CORPORATIONS —RESIDENCE—BANK OF UNITED STATES—GOVERNMENT STOCK.

1. The 4th section of the act of limitations of Virginia, [Act Feb. 25, 1819; Rev. Code 1819, p. 488, § 4,] limiting the right of action in certain cases, to five years after the action has accrued, applies as well to corporations as to individuals. That section has reference, not to the character of the plaintiff, but to the nature of the action.

2. A note was discounted at the Branch Bank of the United States, at Richmond, and after it arrived at maturity, was regularly protested for

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reported by John W. Brockenbrough, Esq.]

non-payment. An action on the case being brought by the bank against the endorser to recover the amount of the note, more than five years from the date of the protest, the defendant pleaded the act of limitations. *Held*: That the right of action is barred by lapse of time, the plaintiffs not being, in the sense of the saving of the act, "beyond the seas, or out of the country." The contract having been made in Richmond, in their banking-house there, between the president and directors of the branch bank, and the defendant, the fact of there being an office of discount and deposit of the Bank of the United States, in Richmond, and of the residence of the president and directors of the branch being fixed there, must be considered, with reference to this contract, as fixing the residence of the corporation itself in Richmond, and not in Philadelphia, so far as the saving of the act applies to the locality of the plaintiffs.

3. It seems, that actions on the case, though not within the term of the proviso of the act of limitations, are within its equity: and that it should be so construed as to embrace actions on the case.

4. Though "The United States" is a stockholder in the Bank of the United States, and is, so far, a party in all suits to which the bank is a party, the doctrine of nullum tempus occurrit regi does not apply to exempt the bank from the operation of the act of limitations: for it is a well settled principle, that where a sovereign becomes a member of a trading company, it divests itself, with reference to the transactions of the company, of the prerogatives of sovereignty, and assumes the character of a private citizen.

At law. This was an action on the case, brought by the president, directors, and company, of the Bank of the United States, against Donald M'Kenzie, a citizen of Virginia, to recover the amount of a negotiable note, made by Michael W. Hancock, and endorsed by M'Kenzie. [On demurrer to rejoinder. Judgment for defendant.]

The note was for $4,000, and was discounted at the Branch Bank of the United States, at Richmond, and was regularly protested for nonpayment on the 26th day of December, 1821. This suit was brought in 1828. The defendant pleaded the act of limitations. [Act Va. Feb. 25, 1819; Rev. Code 1819, p. 487.] The plaintiffs replied "that they ought not, &c. to be barred &c. because the plaintiffs are and were at the time of the accrual of their action, a body corporate, duly constituted as such by an act of congress, &c., and by the said act so constituting them a body corporate with full capacity to sue and be sued as such, their said corporation was fixed and established in the state of Pennsylvania, beyond the limits of the state of Virginia, &c., and the president and directors thereof were, and are, citizens of the state of Pennsylvania, &c., and this they are ready to verify, &c." The defendant rejoined that at the time of the accrual of the plaintiffs' cause of action, the plaintiffs "had, and ever since have had, an office of discount and deposit lawfully established at Richmond, in the state of Virginia, aforesaid, committed to the management and direction of managers or directors, annually and every year appointed, &c., which said managers or

directors of the said office of discount and deposit at Richmond, have always been members, stockholders, and joint corporators of the said company of the Bank of the United States, and have always been citizens of the United States, and residents and inhabitants of the state of Virginia; and the said defendant in fact avers, that the said promissory note, &c. was transferred and assigned to the said plaintiffs in the course of dealings of the said Michael W. Hancock, with the plaintiffs' said office of discount and deposit at Richmond, &c. And this he is ready to verify, &c. wherefore, &c." The plaintiffs demurred to the defendant's rejoinder, and the defendant joined in demurrer. Upon this demurrer, the following opinion was delivered by

MARSHALL, Circuit Justice. The demurrer in this case makes the question, whether the plea of the act of limitations is a bar to the action? The fourth section of the act for limitation of actions, is copied from the English statute on the same subject, and enacts that "all actions of trespass, &c." "shall be commenced and sued within the time and limitation hereafter expressed, and not after, that is to say, the said actions upon the case other than that for slander," "within five years next after the cause of such action or suit, and not after." It has been observed by English judges, and if the observation had never been made, the truth would be obvious to all, that if the act had contained no other clause than this, it would have barred every action it enumerated, whatever might be the character or condition of the plaintiff. It would have barred the rights of infants, femes covert, persons non compos, or beyond the sea, as well as of corporations. The enacting clause does not contemplate the character of the plaintiff, but looks singly to the action itself. This being an action on the case, is within the enacting clause of the statute, and must be barred by it, unless the plaintiff can be brought within the exception. The twelfth section provides, "that if any person or persons, that is or shall be entitled to any such action of trespass, &c. be, or shall be, at the time of such action given or accrued, fallen or come within the age of twenty-one years, feme covert, non compos mentis, imprisoned, beyond the seas, or out of the country, that then, such person or persons, shall be at liberty to bring the same actions, so as they take the same within such times as are before limited," after such disability shall be removed.

The counsel for the plaintiff contends, 1. That this section limits the words of the enacting clause, so as to restrain them from operating on debts due to corporations. 2. That if this be against him, then the plaintiff is within the saving of the exception.

The argument in support of the first point, is substantially this. A corporation aggregate is not liable to any of the disabilities

which are enumerated in the twelfth section; not even to that of being beyond sea, because being a mere legal entity, being entirely incorporeal, it can have no place of residence. Since it cannot be brought within the twelfth section, it ought not to be comprehended in the enactment of the fourth, because the savings of the statute must be construed to extend to every description of persons, who are the objects of the enacting clause. This argument is, I think, anticipated and answered in the observation made on the words of the fourth section. They do not take into view the character of the plaintiff, but of the action. In construing this section, it is entirely unimportant, by whom the suit is brought. The action is equally barred by length of time, whoever may be the plaintiff. The plain words of the statute are decisive. Nor does any reason of justice or policy exist, which should take a corporation out of these words. The legislature could have no motive for limiting the time, within which a suit should be brought by an individual, which does not apply with equal force to a suit brought by a corporation. We find no words in the exception, intimating the intention to make it co-extensive with the enacting clause, or to limit the general provision of the enacting clause to such general classes of persons, as may furnish individuals for whom justice would require the saving of rights, which are found in the twelfth section. An exception is not co-extensive with the provisions from which it forms the exception; and if a corporation cannot be brought within any of the savings of the statute, the inference is, not that a corporation is withdrawn from the enacting clause, but that the legislature did not think it a being whose right to sue, required a prolongation beyond the legal time, given for suitors generally.

2. The proposition that the plaintiffs are within the saving of the rights of persons out of the country, is one of more difficulty, which requires more consideration. The enacting clause, it has been said, looks to the action only. The proviso which gives further time to those whose particular situation was supposed by the legislature to require it, looks to persons only. Its language is, "if any person or persons, that is, or shall be entitled to any such action, be, or shall be, at the time of any such cause of action given or accrued, within the age of twenty-one years," &c. "that then, such person, or persons, shall be at liberty to bring the same actions, &c." The plaintiff, to come within the letter of the exception, must be considered as a person or persons. This, a corporation aggregate, in its capacity as a body politic, in which alone it acts, cannot be; but the statute of Virginia, is taken almost verbatim from the English statute, and, therefore, the construction which has prevailed in England, may be considered as adopted with the words, on which that construction was

made. Long before the statute of Virginia was enacted, the courts of England had extended the construction of this very section, so as to embrace cases within its equity, though not within its words. This decision was not, indeed, made in a case relating to the character of the plaintiff, but in one relating to the character of the cause, which does not stand on stronger reason. In Chandler v. Vilett, 2 Wm. Saund. 117f, it was decided that an action on the case, came within the equity of the saving of the statute, though it is omitted in the enumeration of actions to which that saving applied.[2] The twelfth section of the act of Virginia, likewise omits this action; but I have no doubt that the courts of the state, would so construe that section, as to bring that action within it. The question, I believe, has never been raised, although the occasion for raising it, has frequently occurred. Upon this principle of liberal construction, I think, the twelfth section ought to be extended, so as to comprehend in its provisions, any plaintiff actually affected by the impediments it recites. If, then, the present plaintiff really comes within the equity of the twelfth section, I should be much inclined to allow him its benefits; but if the plaintiff claims the advantage allowed to persons, there is some reason for subjecting him to the consequences resulting from the character in which those advantages are claimed. The plaintiff, is a corporate body, acting by the name and style, of the President, Directors & Company of the Bank of the United States, and consisting of the original subscribers to the said bank, or their assignees. The president and directors, are to be stockholders, and are to be elected annually at the banking-house, in the city of Philadelphia, at which place, they are to carry on the operations of the said bank. They are authorized to establish offices of discount and deposit, wherever they may think fit, and to commit the management of the said offices, and the business thereof, to such persons, and under such regulations, as they may think proper. The president and directors, transacting the business of the bank at Philadelphia, have, in pursuance of the power given in the charter, established an office of discount and deposit, at Richmond, to transact the business

---

[2] See, also, Rochtschilt v. Leibman, 2 Strange, 836. The proviso in the English statute, omits the action on the case generally, but embraces in its terms, actions on the case for words. The proviso in our statute, omits the action on the case altogether: yet, in the last case cited, the court held, that the equity of the saving, applied to an action on the case on a bill of exchange. The reason for extending the equitable construction of the saving clause of our statute to the action on the case generally, seems to be still stronger here than in England; for as the proviso of the English statute expressly comprehended one species of action on the case, while it omitted the action generally, it might be very plausibly argued, that every other species was excluded, upon the principle that expressio unius, exclusio alterius.

of the bank at that place. At this office, as at every other, the whole business is necessarily conducted in the name of the corporation, and the president and directors of this office, as at every other, are as much the agents of the corporation, as the president and directors doing business at Philadelphia. The president and directors, at Philadelphia, are neither the nominal nor real plaintiffs. The nominal plaintiffs, are the president, directors and company; the real plaintiffs, are all the stockholders. The president and directors transact so much of the business of the company, as is proper for them, at their banking-house, in Philadelphia; but so much of the business of the company as is proper for the president and directors of the office at Richmond, is transacted at their banking-house, in Richmond. The contract, on which the present suit is founded, was made with the company, acting by its agents in Richmond.

To bring the plaintiff within the letter, or the spirit of the saving in the twelfth section, locality must be given to the corporation. A place of residence must be assigned to it, and that place of residence, must be out of the commonwealth of Virginia. The counsel for the plaintiff contends, that the corporation resides in Philadelphia. How is this to be sustained? The corporate body consists of all the stockholders, and acts by a name, comprehending all the stockholders. These stockholders reside all over the United States; but being in their corporate capacity, in which alone they act, a mere legal entity, invisible, inaudible, incorporeal, they act by agents. It may be well doubted, and is doubted, whether the residence of these agents, or their place of doing business, can fix the residence of the corporation. If it can, these agents are divided into distinct bodies, residing in different states, and doing business at distinct places, in those different states. The banking-house of the president and directors of the office at Richmond, is as fixed and as notorious, as the banking-house at Philadelphia. The agents of the company, acting at Richmond, are as notoriously, and as completely its agents, as those who act at Philadelphia. If, then, the residence of the corporate body is fixed and ascertained, by the residence of its agents, or their place of doing business, it resides in Richmond, as truly as in Philadelphia. So far as respects this particular contract, it may, with entire propriety, be said to reside in Richmond. The contract was made here, with agents who reside here, at a banking-house established here, and is to be performed at this place. In equity and in reason, the plaintiff cannot, I think, as to this contract, if as to any, be placed in Philadelphia. When it is recollected that we resort to the equity of the statute to bring the plaintiff or the action on the case within the terms or the operation of the twelfth section, the reason is, I think, the stronger for con-

sidering this case as excluded from it, and within the enacting clause. The case of Bank of U. S. v. Deveaux, 5 Cranch, [9 U. S.] 61, 2 Pet. Cond. R. 189, decides this case, in principle. In that case, the court determined that it might look behind, or through the name of the corporation, and see the individuals who were the actual plaintiffs who constituted that legal entity in whose name the corporation acted. It is very much under the sanction of that decision, that the plaintiff is brought within the twelfth section of the act; and that decision makes the plaintiff a resident of every place where any member of the corporation resides. However difficult it might be to apply the principle of that case in reason and in justice to a contract made by an individual residing and sued in a state where no office or banking-house existed, and where a straggling corporator was to be found, no difficulty can exist in applying it to a case like this, where a suit is brought in the state in which the contract was made, in which it was to be performed, and in which the agents and members of the corporation with whom the debt was contracted, and to whom it was to be paid resided.

The plaintiff also insists, that the act does not apply to this case, because the United States, being a member of the corporation, is a party plaintiff. This argument has, I think, been fully met at the bar by the counsel for the defendant. In support of the argument urged at the bar, some decisions made by the supreme court, may, I think, be urged. It may well be doubted, on the authority of these cases, whether the privileges, the prerogative, if I may use the term, of the United States as a sovereign, belong to a case in which it does not appear in its sovereign capacity. In Postmaster General v. Early, 12 Wheat. [25 U. S.] 136, 6 Pet. Cond. R. 480, the jurisdiction of the court was denied by counsel, although the suit was brought for a debt confessedly due to the United States. It was sustained, because in the opinion of the judges, it was given by an act of congress. If jurisdiction could not be maintained without an act of congress, much difficulty would certainly be felt in applying the prerogative of government to such a suit, so as to withdraw the bar of the statute of limitations. In the case of Bank of U. S. v. Deveaux, [supra,] it was not even alleged that the United States was a party, because a member of the corporation, and that jurisdiction could be taken on that ground. In Bank of U. S. v. Planters' Bank of Georgia, 9 Wheat. [22 U. S.] 904, 5 Pet. Cond. R. 794, the defendant pleaded to the jurisdiction of the court, because the state of Georgia was a corporator. The judges of the circuit court being divided on the question, it was referred to the supreme court. In this case, the question, whether a sovereign, becoming a member of a trading corporation, carries its sovereign perogatives with it, was brought di-

rectly before the court. The court said:—"It is, we think, a sound principle, that when a government becomes a partner in any trading company, it divests itself, so far as concerns the transactions of that company, of its sovereign character, and takes that of a private citizen. Instead of communicating to the company its privileges and its prerogatives, it descends to a level with those with whom it associates itself, and takes the character which belongs to its associates, and to the business which is to be transacted. Thus, many states of this Union, who have an interest in banks, are not suable even in their own courts, yet, they never exempt the corporation from being sued. The state of Georgia, by giving to the bank the capacity to sue and be sued, voluntarily strips itself of its sovereign character, so far as respects the transactions of the bank, and waives all the privileges of that character. As a member of a corporation, a government never exercises its sovereignty; it acts merely as a corporator, and exercises no other power in the management of the affairs of the corporation, than are expressly given by the incorporating act. The government of the Union, held shares in the old Bank of the United States; but the privileges of the government were not imparted by that circumstance to the bank. The United States was not a party to suits brought by, or against the bank, in the sense of the constitution; so with respect to the present bank. Suits brought by or against it, are not understood to be brought by, or against the United States. The government by becoming a corporator, lays down its sovereignty, so far as respects the transactions of the corporation, and exercises no power or privilege which is not derived from the charter." This case has, I think, fully decided the question, whether any prerogative of the United States, is imparted to the bank. In Bank of Kentucky v. Wister, 2 Pet. [27 U. S.] 318, it appeared that the state of Kentucky was the sole proprietor of the stock of the bank, yet, it was determined by the court, that the case was decided by the Case of Planters' Bank of Georgia, in 9 Wheat. [22 U. S. 904.] This point, then, is completely settled, as I think, in the supreme court. The law is for the defendant, and judgment is to be given for him.