GOLDSMITH, comptroller-general, *vs.* THE AUGUSTA AND SAVANNAH RAILROAD COMPANY.

[This case was argued at the last term, and the decision reserved.]

1. The objection in regard to title is covered by the decision in the case of *The State vs. The Rome Railroad Company,* decided at the present term.

2. When an enrolled act limits taxation to " one-half of *per centum* on its annual income," and the act as published by authority, expresses the limitation to be " one-half of one *per centum,*" the two expressions will be held to mean the same thing.

3. When the charter of a railroad company declares " that the said railroad and the property of said company shall not be subject to be taxed higher than one-half of one *per centum* on its annual income," in measuring a tax imposed on the property of said company, the *per centum* is to be counted on the gross and not on the net income. The lease of the road to another company by authority of the legislature does affect the basis of taxation. The income contemplated by the charter is not the annual rental, but the earnings of the road. The act authorizing the lease not having any provision in regard to taxation, the limit in the charter was not lost or changed by the lease.

4. In order to resist the process of the comptroller-general to collect the tax assessed by him by affidavit of illegality returnable to the superior court of Fulton county, under the act of 28th of February, 1874, and amendments thereto, the railroad company should have complied with the condition precedent required by the 12th section of the act of 1875, and should have made the return therein required. The remedy by injunction is not before us.

Constitutional law.   Laws.   Railroad.   Charters.   Tax.

Before Judge GRICE. Fulton Superior Court. April Term, 1878.

The comptroller-general issued two *fi. fas.* against the Augusta and Savannah Railroad for taxes for 1876 and 1877, and penalties for default. Defendant filed affidavits of illegality, alleging that "by the original act incorporating the Augusta and Waynesboro Railroad (afterwards changed to name of defendant), of 31st December, 1838, it is provided, in section 13, that the said railroad and its property shall not be subject to be taxed higher than one-half of one *per centum* on its annual income;" that the present *ad valorem* tax is illegal, and unconstitutional, as impairing the obligations of its charter contract; that defendant's road was leased to the Central Railroad, and the latter had returned and paid all taxes that could be legally required of it under defendant's charter; that this question had been adjudicated in favor of defendant (54 *Ga.*, 501), etc.

The cases were submitted to the court without a jury, on the following agreement:

"In the above entitled cases, it is admitted and agreed, that the charter of 1838 of the Augusta and Waynesboro Railroad is the charter of the Augusta and Savannah Railroad, with only a change of name.

"That the tax of one-half of one per cent. on its *net annual income* has been regularly paid to the state, in good faith, on returns made by its lessee, the Central Railroad Company.

"That the lease of this entire railroad and property to the Central Railroad, for the annual rental of $73,000, not to be increased or diminished by the amount of business done, or expenses incurred, was made in June, 1862, under the act of January 22, 1852, for the term of the charter of the Augusta and Savannah Railroad.

"That in the 13th section of the charter, as derived from the authorized printed pamphlet of the acts of 1838, these

words occur, to-wit: 'Higher than one-half of one *per centum* on its annual income,' and in the enrolled act, the word 'one' is left out before '*per centum*,' and the original enrolled act may be exhibited by either party to this court, and to the supreme court.

"That the judgment of the superior court of Fulton county, in a former case between these parties, on a tax *fi. fa.*, was affirmed by the supreme court, and the records of these courts may be used as evidence by either party in these cases.

"That all acts of the legislature of Georgia, which may be read or referred to by either party, will be considered in evidence, without being copied in these proceedings, or for the supreme court, should these cases go up.

"That these two cases be tried together, and decided as one, by the presiding judge, without a jury, as to law and facts, with the right of either party to bill of exceptions and writ of error to the supreme court."

The presiding judge held that the objection made to the act of incorporation for vagueness was not good ; that the rental of defendant's road ($73,000) was both its net and gross income, and, it being admitted that tax had been paid on the net income, that was all that could be required. He therefore sustained the illegalities.

At the close of the evidence, counsel for the state moved to dismiss the affidavits of illegality on certain grounds, and, upon the sustaining of the illegalities, excepted, and based their assignments of error on the grounds of the motion, which were as follows:

1. That defendant had not made a return of its gross income or receipts, nor paid the tax upon the same, as required by the act of March 30, 1875, as a condition precedent to the right to contest the payment of the tax upon its property.

2. That section 13 of the act incorporating said defendant is too vague, ambiguous and uncertain to constitute a contract between it and the state in relation to taxation.

3. That said section contains matter different from what is expressed in the title, and is unconstitutional and void.

4. That if said defendant ever had any valid claim to a limited rate of taxation, it lost the same by its lease to the Central Railroad.

R. N. ELY, attorney-general; R. TOOMBS, for plaintiff in error.

A. R. LAWTON, for defendant.

JACKSON, Justice.

1. It is argued that this railroad company is not exempt from *ad valorem* taxation, as provided and limited in the charter, because the title to the act incorporating it does not cover the exemption or limitation, but that the charter contains matter different from what is expressed in the title. This point is decided in the case of *The State vs. The Rome Railroad Company*, and settled against the objection. See that case, p. 473.

2. It is said again that the limitation on the power to tax is not good, because the enrolled act in the office of the secretary of state limits it to " one-half of *per centum*," which is too vague and meaningless to confer such a privilege or franchise or favor; but the act published by authority of the state as the charter of this company, expresses the limitation to be " one-half of one *per centum*," and such was doubtless the intention of the general assembly. At all events, when the act enrolled contains the words " one-half of *per centum*," and the act published by authority of the general assembly contains the words " one-half of one *per centum*," the two expressions will be held to mean the same thing—that is to say, the sensible, intelligible thing, to-wit: one-half of one *per centum*.

3. The limitation is therefore good in our judgment, and the question arises upon what is the *per centum* to be calculated. The words in the charter are " its annual income."

Does that mean gross or net income? We think that the meaning is gross income. 4 Hill, N. Y., 23; 7 Hill, 504. Besides, in other charters of other railroad companies the word "net" is inserted before income. Why left out here, if the intention was to levy on net income only?

It is said however, that the road is leased to the Central Railroad for a certain sum, and that this sum is the gross income—the only income that the company receives, and therefore the gross income. The act authorizing the lease does not touch taxation. The state does not alter its power to tax as in the charter expressed. Can the two companies alter that rule of taxation fixed in the charter of one of them without the state's assent? Clearly not, for then they might reduce it to a mere nominal sum and fritter away the tax rate reserved in the charter to little or nothing. The security for the tax due the state is this road and its appurtenances; the tax reserved is the *per centum* on its gross income; that income is what passage money and freights this road makes each year; of that an account must be rendered, and on that the *per cent.* must be estimated.

4. But it appears that no return has been made by this company so as to give jurisdiction to the superior court of Fulton county by affidavit of illegality. The 12th section of the act of 1875—pamphlet p. 118—requires that the company shall "make return of all the gross income and receipts, and of their net income also," as a condition precedent to their resistance of the payment of the *ad valorem* tax upon their property under the provisions of section 3 of the act of February 28, 1874, which gives Fulton superior court jurisdiction to try the illegality at all. Under this view there was no jurisdiction to try the case, and the defendant's affidavit of illegality ought to have been dismissed. The other points are ruled to indicate the opinion of this court on questions necessary to a settlement of the case should the parties desire a settlement. The remedy by bill and injunction is not before us.

Judgment reversed.