Wesley **COBB** and Nereida Cordero, for themselves and all others similarly situated, Plaintiffs,

v.

Abraham **BEAME**, Individually and as Mayor of the City of New York, and Michael Codd, Individually and as Police Commissioner of the City of New York, Defendants.

**No. 75 Civ. 3062.**

United States District Court,

S. D. New York.

Sept. 30, 1975.

W. Bernard Richland, Corp. Counsel; New York City, by Elliot L. Hoffman, New York City, of counsel, for defendants.

## OPINION AND ORDER

PIERCE, District Judge.

This is a § 1983 civil rights action brought by plaintiffs Cobb and Cordero for injunctive relief and a declaration that a New York City ordinance, requiring that an American flag be displayed at assemblies and parades, unconstitutionally infringes upon federally protected rights of free speech and assembly.

On June 7, 1975, Paul Kreingold, a member of the steering committee of the New York City local of the U.S. Labor Party, was arrested at a rally for the Party for failure to have an American flag on display in violation of New York City Administrative Code § 435–8.0. On June 28, 1975, Robin Taub, another member of the U.S. Labor Party, was arrested for violation of the same ordinance. Present at that second rally was Nereida Cordero, also a member of the Party local and a plaintiff herein. Kreingold's summons was made returnable in the Criminal Court of the City of New York on July 8; Taub's summons was similarly returnable on July 28.

Plaintiffs Cobb and Cordero, both members of the New York local of the U.S. Labor Party, subsequently filed a complaint in this Court on June 24, 1975. The suit, characterized by plaintiffs as a class action, sought declaratory relief to the effect that § 435–8.0 of the Administrative Code is unconstitutional on its face and sought an injunction restraining defendants from the enforcement of that ordinance. On June 30, 1975, this Court issued to defendants an order to show cause why they should not be temporarily restrained from enforcing the ordinance against plaintiffs, and a hearing was set down for July 2, 1975. Following the hearing, this Court on July 3, 1975 entered a temporary restraining order enjoining defendants and their agents from enforcing the or-

New York Civil Liberties Union by Paul G. Chevigny, New York City, of counsel, for plaintiffs.

dinance against the two named plaintiffs in this action, pending the determination of the motion for a preliminary injunction. That motion, based on undisputed facts, having been fully briefed by the parties, the Court determines that the preliminary injunction must issue as to the named plaintiffs herein.

According to affidavits supplied by plaintiffs, both Cobb and Cordero were scheduled to be deployed organizing, selling papers, and talking to people at rallies of the U.S. Labor Party scheduled in the weeks following the filing of the complaint herein and before the return dates of the state criminal summonses. However, as of the date of the complaint, neither plaintiff had been arrested for violation of the challenged ordinance, although their moving affidavit states a continuing fear that such arrests will be made. It is not disputed that members of the U.S. Labor Party have been warned several times of the requirement that an American flag be at their rallies and that there has been no attempt to comply with the ordinance.

Section 435–8.0 of the Administrative Code of the City of New York reads, in pertinent part, as follows:

*Public assemblies; display of flag.* —a. All assemblies, warranted by law, held in any of the streets of the city, where public discussions are held, shall have the American flag, the dimensions of which shall be not less than thirty-six inches by forty-eight inches, conspicuously displayed at all times during the whole of such assembly and every parade or procession must have at or near its head the American flag, of similar dimensions, conspicuously displayed at all times during the formation of such parade or procession.

* * * * * *

"c. Any person or member of a group of persons who shall violate any provision of this section shall upon conviction thereof, be punished by a fine of not more than one hundred dollars or by imprisonment not exceeding ten days or both such fine and imprisonment."

Subsection (b) of the ordinance, prohibiting the display of certain other flags and banners, is not at issue in this case. According to the Corporation Counsel for the City, this action is the first to challenge the validity of the American flag requirement since its adoption by the Board of Aldermen in 1917.

Section 435–8.0 does not apply to all public assemblies; rather, it applies only to those "warranted by law", such as rallies at which a sound amplification device is employed. These are the type of assemblies which the U.S. Labor Party hold; see *United States Labor Party v. Codd,* 391 F.Supp. 920 (E.D.N.Y. 1975).

### Discussion

■■ Plaintiffs urge that this Court has jurisdiction over the present action by nature of 28 U.S.C. §§ 1343 and 2201, and the Court so concludes. This is an action to redress alleged deprivation of federally protected constitutional rights under the first and fourteenth amendments, brought against state officials pursuant to 42 U.S.C. § 1983.[1] Plaintiffs bring this action on behalf of "all others similarly situated" but at this juncture no class determination has yet been sought pursuant to Rule 23 Fed.R. Civ.P., it being clear to all parties, and to this Court, that the first issue to be determined is whether this suit can be

1. Although municipalities are not considered to be "persons" within the meaning of § 1983, the statutory words "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory" do not exclude the acts of an official or policeman who can show no authority under state law to support his actions. *Monroe v. Pape,* 365 U.S. 167, 172–87, 192, 81 S.Ct. 473, 5 L.Ed. 2d 492 (1961). Municipal ordinances and their enforcement may be challenged in § 1983 actions; see *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975).

maintained in federal court in light of the doctrine of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

Cognizant of the principle that comity with the several states is a fundamental component of this nation's federal system, Congress has long provided that a federal court may not interfere with pending state judicial proceedings. 28 U.S.C. § 2283. Congress enacted § 1983 as an exception to the Anti-injunction Statute for situations where constitutional rights are threatened with deprivation under color of state law. Yet, despite this exception, the course of recent decisions in the Supreme Court indicates that considerations of comity apply to § 1983 actions as well.

In *Younger v. Harris,* the Supreme Court held that a federal court may not enjoin a pending state criminal prosecution brought pursuant to a challenged state statute except under extraordinary circumstances such as bad faith prosecution and harassment by state enforcement agencies. In a companion case, *Samuels v. Mackell,* 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971), the Court ruled that the same principles mandated the conclusion that declaratory relief as to a state law's constitutionality similarly is foreclosed to a state defendant. The essential consideration underlying these decisions and others reaching back to *Ex parte Young,* 209 U.S. 123, 28 S. Ct. 441, 52 L.Ed. 714 (1908) was that a state judicial proceeding had already begun or was pending against the federal plaintiff. Thus, the federal system must remain

> "cognizant that a pending state proceeding, in all but unusual cases, would provide the federal plaintiff with the necessary vehicle for vindicating his constitutional rights, and, in that circumstance, the restraining of an ongoing prosecution would entail an unseemly failure to give effect to the principle that state courts have the solemn responsibility, equally with

the federal courts, 'to guard, enforce, and protect every right granted or secured by the constitution of the United States.'" (*Steffel v. Thompson,* 415 U.S. 452, 460–61, 94 S.Ct. 1209, 1216, 39 L.Ed.2d 505 (1974) (citations omitted).)

However, as the Supreme Court has frequently stated, when there are no state proceedings pending against the federal plaintiff, the considerations of comity do not apply with the same force. "Requiring the federal courts totally to step aside when no state criminal prosecution is pending against the federal plaintiff would turn federalism on its head." *Steffel v. Thompson, supra,* at 472, 94 S.Ct. at 1222; see *Lake Carriers Ass'n v. MacMullan,* 406 U.S. 498, 509, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972). This is the principle which plaintiffs urge controls the present case.

However, the concept that a federal plaintiff may overcome the bar of *Younger v. Harris* solely upon a showing that he has not been named in state court has been refined through more recent decisions of the Supreme Court. In *Steffel v. Thompson,* the Court examined the *Younger* doctrine in a case where the federal plaintiff, although not named in state court, had participated in the same actions which led to state prosecution of another. There petitioner Steffel and others had engaged in handbilling against the Vietnam situation on the premises of a private shopping center. After having left once under threat of arrest for criminal trespass, the protestors returned a few days later only to be warned again that arrest would follow. Petitioner Steffel left to avoid prosecution, but his companion was arrested by state authorities. Steffel then sued in federal court for an injunction and declaratory relief. In holding that Steffel was not barred by the rule of *Younger v. Harris,* the Court observed that when no state proceeding is pending against the federal plaintiff, federal intervention does not result in duplicative legal

proceedings or disruption of the state criminal justice system. 415 U.S. at 462, 94 S.Ct. 1209.

Although the *Steffel* Court did not address the question of whether a federal plaintiff might be foreclosed by nature of the communality of his interest with that of the state defendant, that consideration was taken up in two decisions decided by the Supreme Court late last term.

In *Hicks v. Miranda*, 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975), the owner of a motion picture establishment sued in federal court for an injunction and a declaration that four copies of a film owned by him had been improperly seized in state proceedings. Prior to the commencement of Miranda's federal action, state officials, acting pursuant to authorized warrants, had seized as obscene four copies of a film from Miranda's theater and had arrested two of Miranda's employees under the state obscenity statute. Miranda sued in federal court to have the law declared unconstitutional and the films returned, but he was added as a party defendant in the state proceedings after the filing of the federal action. In deciding that the district court erroneously had proceeded to the merits of the federal action, the Supreme Court observed that Miranda "had a substantial stake in the state proceedings . . . ." 422 U.S. at 348 95 S.Ct. at 2291. Speaking of Miranda and the other federal plaintiffs, the Court set forth a new aspect of the *Younger* doctrine.

"Obviously, their interest and those of their employees were intertwined; and as we have pointed out, the federal action sought to interfere with the pending state prosecution." (422 U.S. at 348, 95 S.Ct. at 2291.)

The Court then noted that Miranda had been named as an additional party defendant in state court shortly after the filing of his federal complaint. Finding these two factors sufficient to distinguish the action from that brought in *Steffel v. Thompson*, the Court wrote:

"[W]e now hold that where state criminal proceedings are begun against the federal plaintiffs after the federal complaint is filed but before any proceedings of substance on the merits have taken place in the federal court, the principles of *Younger v. Harris* should apply in full force." (422 U.S. at 349, 95 S.Ct. at 2292.)

Shortly thereafter, the Supreme Court had occasion to explore further the meaning of "intertwined" interests as it relates to the *Younger* doctrine. In *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975), three drinking establishments engaged in presenting topless dancing filed a § 1983 action attacking a local ordinance banning any and all such entertainment; each bar had halted its topless entertainment after passage of the ordinance. After the district court refused to enter a temporary restraining order, one of the bars, M & L Restaurant, Inc., resumed the topless displays. A criminal summons promptly issued against M & L, but not against the two bars which had not resumed topless entertainment. The federal district court subsequently found the challenged ordinance to be unconstitutional on its face, and held that the $500 daily penalty for violation of the ordinance warranted the entry of injunctive relief. The district court ordered such relief as to all three plaintiffs, concluding that there was no compelling reason to distinguish between M & L and the other two bars on *Younger* grounds. *Salem Inn, Inc. v. Frank*, 364 F.Supp. 478 (E.D.N.Y.1973). The Court of Appeals for the Second Circuit affirmed, concluding that the interests of avoiding contradictory outcomes, of conservation of judicial energy, and of a clear-cut method of determining the application of *Younger v. Harris* all militated in favor of granting injunctive relief to all three bars. 501 F.2d 18 (2d Cir. 1974). The Supreme Court reversed as to M & L, stating that consid-

erations of federal comity outweighed the fear of inconsistent results. 422 U. S. at 928, 95 S.Ct. 2561.

In so deciding, the Supreme Court not only rejected the conclusion of the Second Circuit that all three bars were free from the strictures of *Younger,* but the Court rejected as "equally Procrustean" the argument that the suit against M & L operated to foreclose the other two bars from suing in federal court.

"While there plainly may be some circumstances in which legally distinct parties are so closely related that they should all be subject to the same *Younger* considerations which govern any one of them, this is not such a case—while respondents are represented by common counsel, and have similar business activities and problems they are apparently unrelated in terms of ownership, control and management. We thus think that each of the individual respondents should be placed in the position required by our cases as if that respondent stood alone." (422 U.S. at 928, 95 S.Ct. at 2566.)

The Court accordingly held that both declaratory and injunctive relief was properly afforded to the two federal plaintiffs who had not been sued in state court. Id. at 930, 95 S.Ct. 2561.

Thus, in both *Hicks v. Miranda* and *Doran v. Salem Inn,* the Supreme Court refused on grounds of comity to consider a suit by a federal plaintiff who had been added as a party defendant to a state criminal proceeding after the federal action had commenced but before proceedings on the merits had begun. In the former case, the Court found as an additional rationale the fact that Miranda was the owner of the films seized in the state proceeding and employer of the state defendants. This is the legal backdrop against which the present application for injunctive relief must be considered.

In this case there are two members of the U.S. Labor Party local who are presently awaiting prosecution in state court, and two separate members of the same Party local who are plaintiffs herein. Neither of the plaintiffs here have been sued in state court. This Court must enquire as to whether, despite the fact that they are not state defendants, the interests of these federal plaintiffs are so intertwined with those of the state defendants as to be adequately represented in the state court suit. If this Court was to take a narrow view of precedent, the simple fact that the plaintiffs herein are not defendants in state court would suffice to take this case out from under the rule of *Younger v. Harris,* in the manner in which *Steffel v. Thompson* was decided. Further, it could be argued that the statements in *Hicks* and *Doran* as to communality of interest were not vital to the decision of either of those cases, and that the fact of post-federal complaint prosecution in state court was dispositive. Indeed, *Doran* refused to expand the concept of *Hicks* that legally separate parties may be bound by the same comity considerations which bind any one of them.

█ █ It is clear so as not to require extended discussion that the present suits in state court cannot operate to vindicate the constitutional rights of the plaintiffs. In the strict sense, the dismissal of a New York State criminal complaint on the ground of the unconstitutionality of the law allegedly violated is a determination only of the rights of the defendant who is a party thereto. *414 Theater Corp. v. Murphy,* 499 F.2d 1155, 1158 (2d Cir. 1974). Further, the corporation counsel presents no state procedural mechanism by which the other members of the U.S. Labor Party voluntarily could join as party defendants in state court; New York does not employ the class action mechanism as a method of enforcing criminal laws. Assuming that a class was properly determined in the action in this Court, it would take three hundred state prosecutions to accomplish what the one federal class action might achieve; thus the

state cannot offer a "plain, speedy and efficient" remedy to the alleged deprivations herein. See *Georgia R.R. & Banking Co. v. Redwine*, 342 U.S. 299, 72 S. Ct. 321, 96 L.Ed. 335 (1952). The plaintiffs in this case and the defendants in state court, while sharing common interests, cannot be said to be as "intertwined" as were the owner of a theater and his employees in *Hicks v. Miranda*. The state defendants in *Hicks* were agents of the federal plaintiff; their acts were his acts. No such common "ownership, management or control" is present in this case.

■ Further, this Court does not ignore the fact that this case involves political speech. *Hicks* and *Doran* both involved state obscenity prosecutions. Since elections are involved, this case deals with a right "preservative of other basic civil and political rights." *Reynolds v. Sims*, 377 U.S. 533, 562, 84 S.Ct. 1362, 1381, 12 L.Ed.2d 506 (1964); see *United States Labor Party v. Codd, supra*, 391 F.Supp. at 920. The Corporation Counsel urges this Court to apply the *Doran* principle and to decide that this is precisely the type of case where legally distinct individuals are to all be bound by the same *Younger* considerations which apply to any one of them. In the context of political speech and assembly, in the face of this city ordinance, and in light of the fundamental fact that neither of the plaintiffs herein have been sued in state court, this Court refuses to conclude that the Supreme Court opinion in *Doran* envisioned this type of situation. If this Court were to adopt the expansive reading of the *Hicks* holding and the *Doran* dicta urged by the Corporation Counsel, then a City could foreclose totally any federal constitutional challenge to an ordinance such as this one merely by prosecuting one individual among the many at whom the ordinance was directed. This result truly "would turn federalism on its head" and would impose an exhaustion requirement upon § 1983 actions, which the Supreme Court has refused to do. *Steffel*

*v. Thompson, supra*, 415 U.S. at 472–73, 94 S.Ct. 1209. Further, it would constitute an abrogation of the paramount duty of the federal courts to protect constitutional rights. *Id.* at 473, 94 S.Ct. 1209; see *McNeese v. Board of Education*, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963); *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

Accordingly, this Court holds that the principles of federal-state comity underlying *Younger v. Harris* and its progeny do not operate to bar plaintiffs Cobb and Cordero from this forum even though other members of the U. S. Labor Party are presently defendants in state court. *Doran v. Salem Inn, supra*, 422 U.S. at 928, 95 S.Ct. 2561.

■ Nor is this an appropriate case for abstention. Plaintiffs' attack upon the ordinance is aimed at its face; there is no issue of vagueness or overbreadth here. There is no possibility that the state courts could decide this issue on a non-federal ground. In such circumstances, abstention is inappropriate. *Kusper v. Pontikes*, 414 U.S. 51, 94 S.Ct. 303, 38 L.Ed.2d 260 (1973); *Zwickler v. Koota*, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); *Baggitt v. Bullitt*, 377 U.S. 360, 375–78, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964). The Court thus proceeds to the consideration of whether plaintiffs have made a showing sufficient to warrant injunctive relief.

■ In the absence of the *Younger* limitations, the test for deciding whether injunctive relief is appropriate is the traditional one; plaintiffs must show that they will suffer irreparable harm and also that there is a substantial likelihood of success on the merits. *Doran v. Salem Inn, Inc., supra*, 422 U.S. at 931–932, 95 S.Ct. 2561. This Court must weigh the interests on both sides in this case, since an injunction still will operate to hamper the process of state law enforcement. *Id.*

■ There is growing authority in this Circuit that the deprivation of first

amendment rights can constitute irreparable harm, at least where there is substantial evidence of "chilling effect." *414 Theater Corp. v. Murphy*, 499 F.2d 1155, 1160–61 (2d Cir. 1974); *Katz v. McAulay*, 438 F.2d 1058, 1060 n.3 (2d Cir. 1971), *cert. denied*, 405 U.S. 933, 92 S.Ct. 930, 30 L.Ed:2d 809 (1972). Indeed, in this case plaintiffs are faced with the alternative of foregoing exercise of their first amendment rights of both speech and assembly on the one hand or facing arrest on the other. This has been said to constitute irreparable injury. See *Dombrowski v. Pfister*, 380 U.S. 479, 85 S.Ct. 1116, 14 L. Ed.2d 22 (1965); *414 Theater Corp., supra*, 499 F.2d at 1160. Since plaintiffs need not be tested against the stricter *Younger* measurement of irreparable harm, the Court having concluded that *Younger* does not apply, the alleged deprivation of first amendment rights of political speech and assembly at the beginning of an election year is sufficient to show irreparable harm. On the other side, there has been no showing that the City will suffer any comparable harm.

■ Plaintiffs also satisfy the second standard, likelihood of success on the merits. While this inquiry should not take this Court to the merits of the claim, it appears that the challenged ordinance offends two firmly established lines of Supreme Court precedent. First, the ordinance appears to constitute coercion to express, in this instance by actions, the acceptance of a symbol. This has been held to constitute a violation of first amendment rights. *West Virginia State Board of Education v. Barnette*, 319 U.S. 624, 633–641, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943). The doctrine of *Barnette* is still very much alive in the federal courts; it has been held recently that a schoolchild cannot be compelled to stand or leave the classroom during the pledge of allegiance.

*Goetz v. Ansell*, 477 F.2d 636 (2d Cir. 1973).

> "[T]here is no question, but that the refusal to recite the pledge and salute the flag is a form of expression, and it matters not that the expression takes the form of silence . . . ." (*Russo v. Central School District*, 469 F.2d 623, 631 (2d Cir. 1972), *cert. denied*, 411 U.S. 932, 93 S.Ct. 1899, 36 L.Ed.2d 391 (1973).)

Plaintiffs' activities are similarly embraced within the protection of the first amendment, also because the right of assembly is involved.

In addition, the challenged ordinance appears unconstitutional in that it operates to place impermissible conditions upon the exercise of constitutional freedoms. See *Lamont v. Postmaster General*, 381 U.S. 301, 85 S.Ct. 1493, 14 L.Ed. 2d 398 (1965); *DeJonge v. Oregon*, 299 U.S. 353, 57 S.Ct. 255, 81 L.Ed. 278 (1937); *Grosjean v. American Press Co.*, 297 U.S. 233, 56 S. 444, 80 L.Ed. 660 (1936).

It appears to this Court that the City of New York can no more require that plaintiffs display an American flag as a condition to public speech and assembly than it could require that every newspaper in New York City print an illustration of the American flag over its masthead as a condition to the exercise of freedom of the press.

Plaintiffs having shown that they will suffer irreparable harm in the event that preliminary relief is not granted and that there is a probability of success on the merits, it is hereby ordered that a preliminary injunction shall issue, restraining the defendants, their agents and employees from enforcing New York Administrative Code § 435–8.0 (a) and (c) against the named plaintiffs herein, pending the determination of the class action for declaratory relief, and the application for a permanent injunction.

Submit order.